[No. 31532. Department One. May 24, 1951.]

HENRY BERNDT *et al., Respondents,* v. PACIFIC TRANSPORT COMPANY, INC. *et al., Appellants.*[1]

*R. D. Kendall,* for appellants.

*Bernice Bacharach,* for respondents.

BEALS, J.—Plaintiffs in this action, Henry and Lydia Berndt, were, at all times herein mentioned, husband and wife, residing at Wenatchee.

The defendant Pacific Transport Company, Inc., is a Washington corporation (herein referred to as Pacific), and defendant Charles W. Struck was in the employ of that company during the month of March, 1949.

[1]Reported in 231 P. (2d) 643.

At about seven o'clock a. m., March 16, 1949, plaintiffs left their home in their automobile, intending to drive to Everett over the Stevens pass highway.

At about four o'clock a. m., the same morning, Struck, driving Pacific's truck and trailer loaded with fuel oil, left Richmond Beach in King county, intending to drive to Omak along the Stevens pass highway. There was no snow on the road until Struck approached the steep ascent to the summit on the west side of the pass. He testified that, at this point, he stopped the truck and put chains on the rear tires of the truck. When the truck was somewhere within two miles of the summit, Struck met a snowplow working down the road and turned the truck onto the shoulder of the road into soft snow to give the plow room to pass. When he tried to start the truck, it had no traction, and an examination disclosed the fact that the chain on the left rear wheel had been lost. After receiving some help from the operators of the snowplow, Struck proceeded on his way, and, upon reaching the crest of the road, made inquiry as to the condition of the road on the east side of the mountain. He was informed by a state highway employee that chains were unnecessary, whereupon he removed the remaining chain, informing the highway official that he had lost one of the chains.

Struck proceeded along the road, generally downhill, and found little snow until he reached a point about two thirds of the way up what is known as the Grasslake grade and about five hundred feet west of a curve in the road to the left. At this point, the truck lost traction and stopped. Struck set the brakes, but the truck slid backward and sideways toward the north side of the road, with the result that the truck and trailer stopped in a jackknife position, with the bend toward the north side of the highway, effectually blocking most of the paved portion of the highway.

Struck dismounted from the cab, taking a fusee, but testified that almost immediately he saw plaintiff's car proceeding west along the highway at a distance of from three hundred fifty to four hundred feet from the truck and

trailer. Struck walked toward the car, signaling the driver to stop, but the car continued on its way and collided with the stalled truck. The plaintiffs suffered serious personal injuries, and their automobile was wrecked.

At the place of the collision, the paved portion of the highway is twenty-two feet wide, the south shoulder being eleven feet in width and that on the north eight feet.

Plaintiffs instituted this action against Pacific and Mr. and Mrs. Struck, alleging in their amended complaint, which stated two causes of action, that Pacific's employee had negligently left the truck and trailer standing upon the truck's left-hand side of the highway, completely blocking the road; that plaintiffs, proceeding around a sharp curve, suddenly approached the truck, and that, without fault on the part of plaintiffs, their car collided with the front of the truck, resulting in injuries to plaintiffs and in damage to their car.

The damages demanded in plaintiffs' first cause of action were itemized and included seven hundred dollars' damage to the car, hospital and doctor bills, dental services to be incurred, medicines, surgical operation expenses, loss of earnings past and future, and other damages suffered by Mr. Berndt, including five thousand dollars on account of "pain, suffering and nervous shock," a total of $8,341.

Plaintiffs then, by a second cause of action, alleged that plaintiff Lydia Berndt had been severely and permanently injured, to plaintiffs' further damage in the sum of $22,366.23, which included her hospital and doctor bills, future medical expenses, loss of earnings in the sum of five thousand dollars, and other items, including "permanent injuries, pain and suffering, shock, scars and permanent incapacity," estimated at fifteen thousand dollars.

By their second amended answer to the amended complaint, defendants admitted the corporate existence of Pacific Transport Company, Inc., and that plaintiffs were husband and wife, denying the other material allegations in both causes of action set forth in plaintiffs' amended complaint, and particularly denying all negligence on the part of Pacific or Struck, its employee.

By way of a first affirmative defense, defendants pleaded contributory negligence on the part of plantiffs in operating their automobile, and alleged that any damage suffered by them was due to their own negligence.

For a second affirmative defense, defendants alleged that defendant Struck was at all times operating the truck and trailer in a cautious and careful manner and at proper speed, on his right-hand side of the highway, and that suddenly, without warning, the truck and trailer "jackknifed," so that the front end of the trailer went to the left of the highway, throwing the rear end of the truck likewise to the left, blocking a portion of both the right and left sides of the highway, but leaving sufficient room for a car to pass either to the right or left of the truck and trailer, if the car was traveling in a lawful, cautious, and careful manner; that, because of the slippery condition of the highway and new snow, defendant Struck was unable to bring the truck and trailer out of its jackknife position before being struck by plaintiff's automobile; and that the accident was unavoidable and without fault on the part of Pacific or its employee.

Plaintiffs replied to the affirmative defenses contained in defendants' second amended answer, denying the affirmative allegations therein contained.

The action was tried to a jury, which returned a verdict in plaintiffs' favor against all of the defendants in the amount of $8,491.23, $7,291.23 being "Damages for Lydia Berndt," and $1,200 "Damages for Henry Berndt."

Defendants' motions for judgment in their favor notwithstanding the verdict or, in the alternative, for a new trial having been denied, judgment was entered in plaintiffs' favor upon the verdict, from which judgment defendants have appealed, making the following assignments of error:

"(1) The Court erred in refusing to sustain defendants' demurrer to evidence; challenge to sufficiency of the evidence; and motion for nonsuit and for dismissal made at the end of plaintiffs' case.

"(2) The Court erred in denying the defendants' motion for a directed verdict or in the alternative for a nonsuit,

challenging the sufficiency of the evidence, at the close of the case.

"(3) The Court erred in denying defendants' motion for judgment notwithstanding the verdict, and in the alternative for a new trial.

"(4) The Court erred in entering judgment against the defendants."

Appellants' assignment of error No. 1 is without merit. The trial court was clearly correct in overruling the motions made by appellants at the close of respondents' case.

Appellants' remaining assignments of error present questions concerning the rulings of the trial court which resulted in submission of the case to the jury and the entry of judgment in respondents' favor upon the jury's verdict.

This matter requires consideration of two questions: (1) does the evidence support a finding by the jury that appellants had been guilty of negligence which resulted in respondents' injuries, and (2) did the trial court err in denying appellants' motion for judgment in their favor for the reason that, from the evidence, the court should have ruled that respondents were barred from recovering judgment in the action because of their own contributory negligence?

The burden rested upon appellants to explain to the satisfaction of the court and jury the fact that Pacific's truck and trailer were stopped on the highway in a position dangerous to other traffic, without negligence on the part of appellants.

Appellant Struck testified that, on the morning of the accident, he was driving appellant Pacific's six-wheel truck and six-wheel trailer, loaded with fuel oil, having altogether a gross weight of seventy-two thousand pounds, up a four and one-half per cent grade; that the pavement was covered by one to one and one-half inches of snow; that there were no chains on any tires; that, while proceeding up the grade, the truck commenced to lose traction, whereupon Struck applied the brakes, stopping the truck, and that, when he started to descend from the cab, the truck moved, jack-knifing over the highway as above stated.

There is testimony in the record to the effect that the truck usually carried four chains during the winter months; that two of the four chains had been removed, over Struck's objection, before the truck left its home base; that, upon approaching the summit of the pass, Struck had put the two chains which he carried on the appropriate wheels; that one of the chains was lost en route, and that, upon reaching the summit of the pass, Struck had removed the remaining chain, in reliance, as he testified, upon the statement of a highway employee that chains would not thereafter be necessary, and because "that one chain would have given me unequal braking power."

Mr. and Mrs. Robert Lathrop, called as witnesses by respondents, testified that, after the collision, Struck said that, if he had had chains on the truck, the accident would not have happened, and that Struck also stated that he had "had an argument with them in Seattle because they took the chains off his truck and put them on another rig."

■ The evidence concerning appellants' negligence was clearly sufficient to justify the trial court in submitting that question to the jury.

Appellants contend that the trial court erred in refusing to hold, as a matter of law, that, from the evidence, respondents were barred from recovery for the accident because of their own contributory negligence.

■ A trial court is not justified in taking a case such as this from a jury pursuant to a ruling that the party claiming damages was guilty of contributory negligence, unless it clearly appears from the evidence that, as a matter of law, the party claiming damages was guilty of negligence which proximately contributed to the accident.

In *McQuillan v. Seattle,* 10 Wash. 464, 38 Pac. 1119, this court said:

"Generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury. [Citing cases and authorities.]

"There are two classes of cases in which the question of negligence may be determined by the court as a conclusion of law, . . . The first is where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances. [Citing cases.] And the second is where the facts are undisputed and but one reasonable inference can be drawn from them. [Citing authorities.] If different results might be honestly reached by different minds then negligence is not a question of law, but one of fact for the jury."

This case has been repeatedly cited in our opinions and by courts of other jurisdictions.

In 10 Blashfield, Cyclopedia of Automobile Law and Practice (Perm. ed.) 510, § 6594, the rule is stated as follows:

"Where the nature and attributes of the act relied upon to show negligence constituting a proximate cause of the injury complained of can only be clearly determined by considering all the attending and surrounding circumstances of the transaction in question, it falls within the province of the jury to pass upon the character of such circumstances. . . .

"If the evidence on the question of negligence is conflicting or such that reasonable men can draw different conclusions therefrom, the question is one for the jury. . The court will not decide it as a matter of law, except under the clearest circumstances. But what amounts to due care and negligence depends upon the circumstances of each particular case."

In the case of *Hadley v. Simpson,* 9 Wn. (2d) 541, 115 P. (2d) 675, this court, speaking through Blake, J., said:

"The questions of contributory negligence and negligence are so interrelated that the former usually cannot be determined without reference to the latter. [Citing cases.] It is for this reason that this court has frequently said that, in negligence cases, the facts make the law. By the same token, decided cases afford little help in determining the issue."

The recent cases of *Discargar v. Seattle,* 25 Wn. (2d) 306, 171 P. (2d) 205, and *Mitchell v. Rogers,* 37 Wn. (2d) 630, 225 P. (2d) 1074, are also in point.

■ From the record, it clearly appears that the evidence presented several disputed questions for the jury to decide.

The incline or grade, up which Pacific's truck was proceeding, was banked with snow on either side of the pavement and shoulders. There was considerable conflict in the testimony as to the exact position of the truck and trailer on the highway and its distance from the snowbanks on either side. Witnesses varied in their testimony concerning the height of the snowbanks, estimating their height at from four to eight feet. Testimony concerning the distance of the truck and trailer from the snowbank on the south side varied from eight to eleven feet, while the clearance on the north side was estimated at from five to eight feet.

The testimony contains various estimates as to the distance from which respondents should have first seen the truck and trailer in its position on the highway. This question was settled by a special verdict of the jury to the effect that the truck was visible to the occupants of a car approaching from the east at a distance of three hundred ten feet.

There was considerable conflict in the testimony concerning the speed of respondents' car as it approached the truck.

Mr. Berndt testified that, on rounding the curve from the east, he was proceeding at twenty-five miles an hour, and that, on seeing the truck, he slowed his car to from fifteen to twenty miles an hour. He also testified that, just before the collision, he was proceeding at not more than ten miles an hour.

Mrs. Berndt testified that, when they rounded the curve, she thought the car was moving at about thirty miles an hour, and that, after it rounded the curve, the speed of the car decreased.

Appellant Struck testified that respondents' car was proceeding at thirty-five miles an hour, and that its speed was reduced slightly, if at all, prior to the collision.

Mr. Berndt testified that, not until he was within thirty or forty feet from the truck, did he notice that it was

stalled; that he first endeavored to turn to the south side of the highway in an attempt to pass the truck on that side, but, concluding that this was impossible, he tried to turn to the north side of the highway, and that, at this time, he applied the brakes and skidded into the truck.

Mrs. Berndt corroborated her husband's testimony to the effect that he first tried to pass the truck on the south side of the highway and then attempted to turn to the north side, also testifying that he checked the speed of the car.

Appellant Struck testified that respondents' car never varied its direction to either side of the highway and that the car slid for from one hundred to one hundred fifty feet before striking the truck.

The record discloses definite conflicts in the evidence introduced by the respective parties. No error is assigned upon any of the court's trial rulings, nor upon any instruction given by the court.

The verdict is supported by the evidence, and the judgment appealed from is affirmed.

SCHWELLENBACH, C. J., HILL, DONWORTH, and FINLEY, JJ., concur.